❏ Original

CLERK'S OFFICE
A TRUE COPY
Dec 07, 2022
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| Information about the location of the cellular telephone assigned call number (480) 404-1710 ("Target Telephone"), whose wireless telephone service provider is Verizon Wireless, as further described in Attachment A. | ) ) ) ) |

Case No.   22   MJ   189

Matter No. 2022R00333

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:   Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

   See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

   See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before   12/21/2022   *(not to exceed 14 days)*

❏ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to   Hon. William E. Duffin   .
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❏ for _____ days *(not to exceed 30)*   ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:   12/7/2022 at 10:50 AM

*William E. Duffin*
*Judge's signature*

City and state:   Milwaukee, Wisconsin

Honorable William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## <u>ATTACHMENT A</u>

**Property to Be Searched**

1.      Records and information associated with the cellular device assigned call number **(408) 404-1710** (referred to herein and in Attachment B as **"Target Telephone"**), that is in the custody or control of Verizon Wireless (referred to herein and in Attachment B as the "Service Provider"), a wireless communications service provider that is headquartered at 180 Washington Valley Road, Bedminster, New Jersey.

2.      The **Target Telephone**.

# ATTACHMENT B

## Particular Things to be Seized

### I. Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a. The following subscriber and historical information about the customers or subscribers associated with the **Target Telephone** for the time period from October 17, 2022, to present:

   i. Names (including subscriber names, usernames, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long-distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber

Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the **Target Telephone**, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as per-call measurement data (also known as "real-time tool" or "RTT").

b. Information associated with each communication to and from the **Target Telephone** for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e., faces of the towers) to which the **Target Telephone** will connect at the beginning and end of each communication, as well as per-call measurement data (also known as "real-time tool" or "RTT").

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the **Target Telephone**.

c. Information about the location of the **Target Telephone** for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the **Target Telephone** on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall

4

compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

**II.** This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

### III. Information to be Seized by the Government

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of Title 21 U.S.C. § 841(a)(1) and 846 involving Dwight BARNES, or his coconspirators during the period of October 17, 2022, to present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.

**CLERK'S OFFICE**
**A TRUE COPY**
**Dec 07, 2022**
**s/ D. Olszewski**
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of )<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)* )<br>Information about the location of the cellular telephone assigned call )<br>number (480) 404-1710 ("Target Telephone"), whose wireless telephone )<br>service provider is Verizon Wireless, as further described in Attachment )<br>A. ) | Case No.    22    MJ    189<br><br>Matter No. 2022R00333 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) & 846 | Possession with the intent to distribute, and conspiracy to possess with the intent to distribute controlled substances. |

The application is based on these facts:

See Attached Affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

NICK STACHULA (Affiliate)   Digitally signed by NICK STACHULA (Affiliate) Date: 2022.12.06 13:37:28 -06'00'
_____
*Applicant's signature*

HIDTA TFO Nick Stachula
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____telephone_____ *(specify reliable electronic means)*.

Date:    12/7/2022

City and state:   Milwaukee, Wisconsin

_____
*Judge's signature*

Honorable William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

I, Nick Stachula, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **(480) 404-1710** and (hereinafter also referred to as **"Target Telephone"**), and known to be used by Dwight BARNES, whose wireless telephone service provider is Verizon Wireless ("Service Provider") headquartered at 180 Washington Valley Road, Bedminster, New Jersey. The **Target Telephone** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.      In this application, the United States seeks (1) historical cell-site location information; (2) historical precision location information; (3) prospective, real-time cell-site location information; (4) prospective, real-time precision location information (i.e., E-911 Phase II data and GPS); and (5) subscriber information and other historic non-content records and information.

3.      Because this warrant application seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), I also make this affidavit in support of an application by the United States of America for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the **Target Telephone**.

1

4.      I am a Detective with the City of West Allis Police Department and have been a sworn law enforcement officer for 23 years. I am currently assigned to the North Central High Intensity Drug Trafficking Area (HIDTA) – Drug Gang Task Force. Since January of 2016, I have been a Task Force Officer with the United States Department of Justice, Drug Enforcement Administration.

5.      As a federal law enforcement officer, I have participated in the investigation of narcotics-related offenses, resulting in the prosecution and conviction of numerous individuals and the seizure of illegal drugs, weapons, stolen property, millions of dollars in United States currency and other evidence of criminal activity.

6.      As a narcotics investigator, I have participated in all aspects of drug investigations, including physical surveillance, execution of search warrants, undercover transactions, court-ordered wiretaps, analysis of phone and financial records, and arrests of numerous drug traffickers. Furthermore, I have attended training courses which specialized in the investigation of narcotics trafficking and money laundering. Through these investigations, my training and experience, and conversations with other law enforcement personnel, I have become familiar with the methods used by drug traffickers to manufacture, smuggle, safeguard, and distribute narcotics, and to collect and launder trafficking-derived proceeds.

7.      I have also participated in investigations involving the use of historical and prospective location information to identify targets, map patterns of travel, corroborate other evidence, and apprehend persons to be arrested. On numerous occasions, this electronic evidence has provided proof of the crimes being investigated and corroborated information already known or suspected by law enforcement. During the course of my investigations, I have regularly used electronic evidence relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of co-conspirators.

2

8. This affidavit is based upon my personal knowledge and upon information reported to me by other federal and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

9. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

10. Based the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Section 841(a)(1) and 846, have been committed by Dwight BARNES and other known and unknown individuals. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of other individuals who are engaged in the commission of these offenses.

## JURISDICTION

11. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

12. On July 21, 2022, I initiated a drug investigation involving the trafficking of fentanyl from Chandler, Arizona to the 3353 South Wollmer Road, #A202, West Allis, Wisconsin via the United States Postal Service (USPS).

13. The recipient of the fentanyl pills was identified as Radontay L. JONES (DOB

3

XX/XX/1981), with telephone number 414-588-9929. The West Allis Police Department (WAPD) obtained a state search warrant for the residence of 3353 South Wollmer Road, # A202 West Allis, Wisconsin after a parcel was intercepted and the USPS obtained a federal search warrant to search the content of the package. The package was found to be contain approximately 88 grams of fentanyl pills (fraudulent prescription medication).

14.     The USPS Inspectors identified twenty-six (26) previous packages sent from Arizona to 3353 South Wollmer Road, #A202 since March of 2022, on a weekly basis.

15.     Radontay JONES was arrested during the execution of the State of Wisconsin search warrant on July 21, 2022 and was transported to the WAPD.

16.     During an interview Radontay JONES confessed to receiving the packages of fentanyl over the past several months and sending money back to the source in Arizona. Radontay JONES ultimately identified the Arizona source of fentanyl pills as Dwight A. BARNES (DOB XX/XX/1976) of 2022 North Nevada Street, Apt 1068 Chandler, Arizona and having cellular phone 414-793-3443. Radontay JONES admitted to receiving the packages and then dropping them off to subject known as "Turtle" and described as a black male, 30's, stocky build, braids, having a lazy eye, using cell phone # 414-254-1396.  JONES indicated "Turtle" drives various rentals and they would meet on the northside of Milwaukee in order to take possession of the packages. Radontay JONES advised that "Turtle" then provide large amounts of United States Currency to him, which was to be sent to Dwight BANRES in the Arizona. Radontay JONES advised that at the time of his arrest he was on the phone with Dwight BARNES. BARNES was using cell phone 414-793-3443.

17.     Case agents obtained an administrative subpoena for the Dwight BARNES cell phone 414-793-3443 (AT&T). Upon receiving the results of the toll analysis for the cell phone, the user of the cell phone stopped placing calls on/after the day of arrest of Radontay JONES on

4

July 21, 2022. The subscriber/user of 414-796-3443 was identified as Dwight A. BARNES at 2022 North Nevada Street, # 1068 Chandler, AZ and financial liable party as Dwight BANRES an email of angiredd4@gmail.com.

18.     Per law enforcement records a subject identified as Tevin JOHNSON sent $4,126.00 to Dwight BARNES in the past and on January 27, 2022, Tevin JOHNSON also sent Dwight BARNES $746.00. Case agents obtained Department of Transportation (DOT) photograph of Tevin JOHNSON and confirmed he matched the description provided by Radontay JONES. Radtonay JONES later identified Tevin Demetrius JOHNSON (DOB XX/XX/1991) (from the DOT photograph) as the person known to him as "Turtle". Jones stated that Tevin JOHNSON was the user of 414-254-1396 and would take possession of the packages of drugs (fentanyl) coming from Arizona. JONES also stated Tevin Demetrius JOHNSON provided him the United States Currency, which was to be sent to the Arizona's source of supply, Dwight BARNES.

19.     Case agents identified the address of 1432 North 49th Street, Milwaukee, Wisconsin as an address affiliated with Tevin JOHNSON and his brother Devin X. RAGLAND, (DOB XX/XX/1994). On August 8th, 2022, case agents conducted surveillance at 1432 North 49th Street, Milwaukee, Wisconsin. During this surveillance a black male matching the description of Tevin JOHNSON was observed walking north on North 49th Street with a small child and carrying grocery bags. This suspect walked up the staircase to 1432 North 49th Street, stopped to talk to another child in the front yard and then proceeded to the front door of 1432 North 49th Street, Milwaukee, Wisconsin. Parked in front of 1432 North 49th Street was a blue 2018 Subaru Legacy WI plate # AML-1442 (hereafter referred to as the Subaru) listing to John V. WISE (DOB XX/XX/1990) of 4312 West Florist Avenue, Milwaukee, WI. Case agents located a prior traffic stop in Washington County from March 12, 2019, where Tevin JOHNSON was the

5

driver of a vehicle registered to John V. WISE. This traffic stop resulted in an arrest of Tevin JOHNSON for narcotics violations.

20.     Case agents located WAPD case # 16-004386, where officer conducted a traffic stop on a gray 2007 Toyota Camry bearing Wisconsin license plate 866-XXN, registered to John V. WISE of 4312 West Florist Avenue, Milwaukee, WI. The vehicle fled from the traffic stop. Follow up was conducted and contact was made with Inger S. CARR (XX/XX/1966) at 2829 North 55th Street, Milwaukee, WI. Inger CARR reported that her cousin, John WISE, and son, Devin RAGLAND, had her vehicle today. No arrests were made.

21.     Case agents located WAPD call # 10-024437 where officers contacted Inger CARR, Tevin JOHNSON, Devin RAGLAND and Taquan Z. SMITH (DOB XX/XX/1991) during a trouble call. Inger CARR was identified as the mother of Tevin JOHNSON, Devin RAGLAND and Taquan SMITH. Per current law enforcement databases Inger CARR has a current address of 3928 North 30th Street, Milwaukee, Wisconsin. Taquan SMITH is currently on probation for Possession with Intent to Deliver Narcotic Drugs and has a current address of 5360 North 26th Street, Milwaukee, Wisconsin.

22.     On August 14, 2022, case agents were conducting surveillance at locations associated with the Dwight BARNES et' al. Case agents observed the previously observed the Subaru parked behind 3928 North 30th Street, Milwaukee, Wisconsin. The Subaru was previously observed parked at 1432 North 49th Street, Milwaukee, Wisconsin. Case agents observed the Subaru depart the residence and proceed east on West Capitol Driver and then south onto North 26th Street. Case agents followed the Subaru and observed Devin X. RAGLAND exit the front passenger seat and enter a light blue Infiniti SUV bearing Wisconsin license plate TE1073 (rear plate only) parked in the 3900 block on North 26th Street (east side of street). This license plate listed to a "light truck" with no vehicle information and registered to Ramon E. SAVAGE (DOB

6

XX/XX/1995) of 6951 North 60th Street, Apt. 105 Milwaukee, Wisconsin. Ramon SAVAGE is known to be associated with the "Wild 100" street gang, with a violent history. Case agents observed the driver of the Subaru and identified him as Tevin Demetrius JOHNSON, aka Turtle. Surveillance was terminated at this time.

23.     On August 16, 2022, case agents were conducting surveillance at 1432 North 49th Street, Milwaukee, Wisconsin and observed the Subaru parked on the street in front of the residence. During this surveillance Devin RAGLAND was observed departing the residence with two unidentified black females and they were surveilled to Mayfair shopping mall in Wauwatosa, Wisconsin.

24.     On August 26, 2022, The Honorable Nancy Joseph authorized a GPS warrant for the Subaru. The warrant was executed, and the GPS unit was installed onto the Subaru.

25.     While case agents were monitoring/conducting surveillance on the "Subaru Devin RAGLAND was identified as the primary user and has been observed conducting numerous suspected narcotic transactions while operating the Subaru in the Milwaukee Metro Area.

26.     On September 30, 2022, case agents coordinated a traffic stop with the Milwaukee County Sheriff Office, where Devin RAGLAND was observed operating and utilizing the Subaru for a drug transaction prior to the traffic stop. During this traffic stop Devin RAGLAND was arrested for Felon in Possession of a Firearm, Possession with Intent to Deliver Marijuana and Fentanyl. In Devin RAGLAND' waistband Deputies found a 9mm SCCY semiautomatic pistol, bearing serial number # 819509.  There was one round in the chamber and nine in the magazine. Deputies also located inside the Subaru a total of approximately 94.9 grams of marijuana, 17 Suboxone strips, one blue fraudulent pill, which tested positive for fentanyl/inside.  Deputies also located two cell phones. Devin RAGLAND did not provide a statement to arresting Deputies.

27.     On October 14th, 2022, the Honorable Stephen Dries reviewed and authorized a

search warrant for Devin RAGLAND's dark blue Apple iPhone 13, currently in evidence under Milwaukee County Sheriff Office Inventory No. 22-003253, Item No. 1 ("Device A") and a silver Apple iPhone 13 Pro, currently in evidence under Milwaukee County Sheriff Office Inventory No. 22-003253, Item No. 1 ("Device B"). Upon a search of the two cell phones, I located numerous text messages consistent with narcotics distribution, messages related to purchase/sale of firearms, photographs of Devin RAGLAND, photographs of suspected fentanyl pills, photographs of various firearms and conversations between Devin RAGLAND and his brother Tevin JOHNSON, aka "Turtle". Tevin JOHNSON's contact was saved under "Big Turtle", and he cell phone number was 414-610-9605. I observed text messages confirming Devin RAGLAND and Tevin JOHNSON are brothers and contained content of the two conspiring together in narcotics distribution and money transactions.

28.    Case agents obtained information from USPS Inspector Joel Tomas that Dwight BARNES had sent two parcels on October 14, 2022, from Chandler, AZ to Milwaukee, WI. The USPS parcels information was as follows:

a.    Tracking # 9500114522422287543992 85225 CHANDLER AZ 10/14/2022 1:14 PM 0 11 $6.75 85225 2616 W WISCONSIN AVE APT 203 MILWAUKEE WI 53233 (Sender: Dwight BARNES 2222 N. McQueen Rd. Chandler, AZ 85225 Recipient: Willie VALES 2616 W. Wisconsin Ave. # 203 Milwaukee, WI 53223).

b.    Tracking # 9534614522422287543987 85225 CHANDLER AZ 10/14/2022 1:11 PM 19 4 $87.45 85225 2353 N FARWELL AVE APT 506 MILWAUKEE WI 53211 (Sender: Dwight BARNES 2022 N. Nevada St. Apt 1068 Chandler, AZ 85225 Recipient: Thelma BARNES 2353 Farwell Apt 506 Milwaukee, WI 53211).

29.    Case agents know that sending the two parcels on the same day with different return addresses is indicative that the parcel having the fictious address of 2222 N. McQueen Rd.

8

Chandler, AZ 85225 contained controlled substances.

30.     In October 2022, case agents identified **(480) 404-1710 ("Target Telephone")** as the new cell phone number utilized by Dwight BARNES from cell phone analysis/comparison of common callers. The top caller of the **"Target Telephone"** was identified as the co-conspirator and Dwight BARNES's girlfriend, Angela REDD, cellphone 414-522-0839, listed to Angela REDD.   There were six additional common callers. The common callers consisted of both Milwaukee area codes (414) and Phoenix area codes (602).

31.     On November 15, 2022, at approximately 11:45AM case agents were conducting surveillance at the known residence of Dwight BARNES, 2022 North Nevada Street, Apt 1068 Chandler, AZ. Dwight BARNES was observed walking around the apartment complex and talking on his cellular phone. Dwight BARNES was last observed walking towards the residence of 2022 North Nevada Street, Apt 1068 Chandler, AZ when surveillance was terminated.

32.     On November 17, 2022, case agents obtained an Administrative Subpoena from Verizon Wireless for the **"Target Telephone"**.

33.     On December 1, 2022, case agents received the results from Verizon Wireless indicating that the **"Target Telephone"** was activated on October 17, 2022 and is subscribed to "Tracfone" with no address information provided.

34.     Upon reviewing the toll analysis for top callers of the Dwight BARNES's old phone number (414) 793-3443 compared to the "**Target Telephone**" case agents located the common contact of (602) 423-7575 having fifty-four (54) contacts with Dwight BARNES's old phone (414) 793-3443 and fourteen (14) contacts with the **"Target Telephone"**, contact (602) 419-0000 having one hundred fifty eight (158) contacts with Dwight BARNES's old phone (414) 793-3443 and thirty three (33) contacts with the **"Target Telephone"**, contact (414) 426-1082 having twenty-one (21) contacts with Dwight BARNES's old phone (414) 793-3443 and three

9

(3) contacts with the **"Target Telephone"**, contact (800) 222-1811 (registered as USPS Customer Service) having ninety (90) contacts with Dwight BARNES's old phone (414) 793-3443 and sixteen (16) contacts with the **"Target Telephone"**.

35.     I believe **Target Telephone**, whose service provider is Verizon Wireless ("Service Provider"), a wireless telephone service provider, continues to contain valuable information on this account that could be used as evidence for the possible crimes of distribution and possession with intent to distribute controlled substances, conspiracy to distribute and possess with the intent to distribute controlled substances, violations of Title 21, United States Code, Sections 841 and 846.

## **TECHNICAL BACKGROUND**

36.     Based on my training and experience, I know that Service Provider can collect historical and prospective cell-site data and historical and prospective E-911 Phase II data about the location of the **Target Telephone**, including by initiating a signal to determine the location of the **Target Telephone** on Service Provider's network or with such other reference points as may be reasonably available.

### **A. Cell-Site Data**

37.     In my training and experience, I have learned that Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas,

10

and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

38.     Based on my training and experience, I know that Service Provider can collect cell-site data on a historical and prospective basis about the **Target Telephone**. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business to use this information for various business-related purposes.

**B. E-911 Phase II / GPS Location Data**

39.     I know that some providers of cellular telephone service, including Service Provider, have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.

40.     As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural

areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.

41.     I also know that certain wireless providers, such as Service Provider, can provide precision location information, also known as estimated location records or historical handset location data, on both a historical and prospective basis. Each provider refers to its proprietary estimates of a cellular device's location differently. This information, however, is sometimes referred to as geolocation information (PING), Network Event Location System (NELOS) data, Global Positioning System (GPS) data, cell tower triangulation or trilateration, round-trip time or real-time tool (RTT), per-call measurement data (PCMD), historical E911 data, or precision measurement information.

42.     Based on my training and experience, I know that Service Provider also can collect per-call measurement data, which Service Provider also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

43.     Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the **Target Telephone**, including by initiating a signal to determine the location of the **Target Telephone** on the Service Provider's network or with such other reference points as may be reasonably available.

### C. Pen-Trap Data

44.     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it.  Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an

Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

### D. Subscriber Information

45.     Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business.

46.     In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify **Target Telephone's** user or users, the locations of that user or users, and the patterns of that user or users. A frequency analysis of the telephone communications between Dwight BARNES and other identified and unidentified subjects is material, in that it can establish whether the calls described above are a deviation from their normal patterns of communication. The frequency analysis of the locations associated with the cellular devices can establish whether the locations are deviations or consistent

13

with normal patterns. This information is relevant to show whether Dwight BARNES and others acted-in-concert, by establishing the nature and extent of their relationship, the existence and scope of the conspiracy, the pattern of their communications, their patterns of travel, and any deviations from those patterns.

## AUTHORIZATION REQUEST

47.    Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

48.    I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

49.    I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the locations of the **Target Telephone** on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

50.    Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Telephone** outside of daytime hours.

14

## ATTACHMENT A

### Property to Be Searched

1.       Records and information associated with the cellular device assigned call number **(408) 404-1710** (referred to herein and in Attachment B as **"Target Telephone"**), that is in the custody or control of Verizon Wireless (referred to herein and in Attachment B as the "Service Provider"), a wireless communications service provider that is headquartered at 180 Washington Valley Road, Bedminster, New Jersey.

2.       The **Target Telephone**.

**Particular Things to be Seized**

I.     **Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

    a.  The following subscriber and historical information about the customers or subscribers associated with the **Target Telephone** for the time period from October 17, 2022, to present:

        i.  Names (including subscriber names, usernames, and screen names);

        ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii.  Local and long-distance telephone connection records;

        iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v.  Length of service (including start date) and types of service utilized;

        vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber

Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the **Target Telephone**, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as per-call measurement data (also known as "real-time tool" or "RTT").

b. Information associated with each communication to and from the **Target Telephone** for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii.   Date, time, and duration of communication; and

iv.   All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e., faces of the towers) to which the **Target Telephone** will connect at the beginning and end of each communication, as well as per-call measurement data (also known as "real-time tool" or "RTT").

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the **Target Telephone**.

c.   Information about the location of the **Target Telephone** for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i.   To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the **Target Telephone** on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall

compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

**II.** This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

### III.   Information to be Seized by the Government

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of Title 21 U.S.C. § 841(a)(1) and 846 involving Dwight BARNES, or his coconspirators during the period of October 17, 2022, to present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.

5